TYLER PARSONS *vs.* ABBY H. TRASK & others.

A contract made in a foreign country by an adult inhabitant thereof, with a citizen of the United States, to serve him, "his executors and assigns," for five years, without fixing the nature and extent of the services, or the place of their performance, in consideration of ten dollars, and of being fed, clothed and lodged, and, at the expiration of the contract, being paid "the customary freedom dues," even if valid where it is made, gives no right to the servant's services in this commonwealth.

ACTION OF TORT for enticing away a servant, with a count for harboring and concealing her with knowledge that she was the plaintiff's servant. Trial before *Merrick*, J., who made the following report thereof:

"It appeared that the plaintiff and Elizabeth Lycka, at Gothenburg in Sweden, on the 5th of August 1840, signed and sealed this agreement: 'This indenture witnesseth, that Elizabeth Lycka, of Gothenburg, aged 21 years, by her own consent and for and in consideration of the sum of ten dollars paid by T. Parsons, Jr., of United States of America, hath bound and put herself servant to the said T. Parsons, Jr., to serve him, his executors and assigns, from the day of the date hereof for and during the full term of five years thence next ensuing, during all which term the said servant her said master, his executors or assigns, faithfully shall serve, and that honestly and obediently in all things, as a good and dutiful servant ought to do. And the said T. Parsons, Jr., his executors and assigns, during the said term, shall find and provide for the said Elizabeth Lycka sufficient meat, drink, apparel, lodging and washing, and at the expiration thereof shall give to her the customary freedom dues. In witness whereof we have hereunto set our hands and seals at Gothenburg, in Sweden this 5th day of August 1840.'

"The plaintiff was then and still is a citizen of the United States, and was at the time of the making of the contract the master of a vessel then lying at the port of Gothenburg, and about to return to the United States. The said Elizabeth was a native of Sweden. In pursuance of their contract she came with the plaintiff in his vessel from Gothenburg to New York,

and then to his home in Manchester in this county. She resided with the plaintiff, doing the common housework of a domestic servant, for about two years. She was examined as a witness for the plaintiff, and testified that she lived with him, and rendered her services to the plaintiff under and in pursuance of the said contract, and that there never was any contract or agreement between herself and him, except that contained in the said indenture. And there was no evidence produced upon the trial, tending to show that any other than that contract had at any time been made by the parties with each other.

" The plaintiff offered evidence tending to show that he had performed his part of the said contract. He also produced evidence tending to show that the said Elizabeth was contented with being in his service, under said contract, and intended to fulfil it on her part, and to remain in his service, in pursuance of the provisions thereof, for the full term of five years therein mentioned ; but that the defendants, by various representations, which the plaintiff contended were unfounded and unjust to him, induced and prevailed upon the said Elizabeth to withdraw from and leave his service before the expiration of the said term of five years; and that in consequence of those representations, she did withdraw from and leave his service, and never returned to his house, or fulfilled her contract by performing any service for him after that time, which was about two years and five months after the time when the parties left Gothenburg on their passage to the United States.

" The presiding judge, being inclined to the opinion that upon the foregoing evidence this action could not be maintained, a verdict, under his ruling to that effect, was returned for the defendants. If this ruling was correct, judgment is to be entered upon the verdict; otherwise it is to be set aside, and a new trial granted."

*S. H. Phillips & W. G. Choate,* for the plaintiff. The contract expressed in the indenture, being in its general purpose intended to establish the relation of master and domestic servant between the parties, is necessarily to be performed at the place of the master's domicil, and is to be governed as to its

nature, validity, obligation and interpretation by the laws of this commonwealth. Story Confl. § 280. 2 Kent Com. (6th ed.) 459. *Prentiss* v. *Savage,* 13 Mass. 23.

Under the laws of this commonwealth, this indenture is a valid contract for labor and service. It does not stipulate for any service different in kind, or submission greater in degree, to the person who, for the time being under the contract, shall be master, than the common law and the laws of this commonwealth impose on the servant in the absence of express stipulations.

Nor does the law prohibit an engagement to render personal services to one who is wholly unascertained at the time of contracting the obligation, and who is to be ascertained independently of the servant's will. On the contrary, such obligations are favored and enforced ; as in the case of seamen, innkeepers, common carriers, and all public officers. It is like a promise to make a table or paint a picture, or labor at any lawful work, or as a domestic servant, for a day or a year, for such person as A. B. shall appoint, or for A. B. and his assigns, or for A. B., and after his death for his executors ; in all which cases the service is neither involuntary or compulsory, because of the prior consent of the servant. The contract is at least valid between the original parties. *Baker* v. *Mair,* 12 Mass. 120. *Haskins* ᴠ *Blair,* 3 Cush. 534.

If necessary in order to give validity to the contract, the words " his executors and assigns " may be rejected, as inadvertently used, and not considered material by the parties, as shown by the words of the indenture and their acts under it; or as being repugnant to and inconsistent with the general intent of the parties. 4 Cruise Dig. tit. 32, *c.* 20, § 25. *Corbin* ᴠ. *Healy,* 20 Pick. 515. *Bott* v. *Burnell,* 11 Mass. 167. *Worthington* ᴠ. *Hylyer,* 4 Mass. 196.

The stipulation for the payment of the customary freedom dues does not render the contract invalid. These words, whose apparent office is merely to fix, by some description understood between the parties, the consideration to be paid, cannot be construed to enlarge the master's power to an extent which would

make it unlawful, and beyond the words in the earlier part of the instrument, which define the relation of the parties. Although these words have no meaning in this commonwealth, they may denote a definite amount in Sweden; and the recognition by the parties, in the contract, of the existence of any subject matter or custom must be *prima facie* evidence of its existence.

If the indenture is void, the plaintiff may nevertheless recover, the person being his servant *de facto* and continuing in his service. 2 Chit. Pl. (6th Amer. ed.) 645, note, and cases cited. *Keane* v. *Boycott*, 2 H. Bl. 511. *Sykes* v. *Dixon*, 9 Ad. & El. 693. *Lumley* v. *Gye*, 2 El. & Bl. 216. *Barber* v. *Dennis*, 6 Mod. 69, and 1 Salk. 68. *Westerdell* v. *Dale*, 7 T. R. 311. *Guppy* v. *Jennings*, 1 Anstr. 256. *Peters* v. *Lord*, 18 Conn. 337.

*O. P. Lord & S. B. Ives, Jr.* for the defendants.

THOMAS, J. The contract of service was made in Gothenburg in Sweden. The plaintiff, at the time it was made, had his domicil in Manchester in this county. He was then in Gothenburg, in a vessel of which he was master. Soon after the making of the contract he returned to Massachusetts, bringing Elizabeth Lycka with him. She resided as a servant in his family for about two years. This was the place of the partial performance of the contract. Here the plaintiff sought to enforce it. He seeks to recover of the defendant damages for an alleged violation of his rights under it in this commonwealth.

The validity of the contract, its construction, the rights of the parties under it in this commonwealth, must be determined by our laws. Such is the view both parties have taken, and the sound one. Our tribunals may afford a remedy upon an executed contract, lawful in the place of its inception and execution, though the contract is against the policy of our laws; but they will not permit parties to execute or enforce such contract upon our soil. For example, a note given for the price of a slave, in a country where slavery was tolerated, might be sued in our courts; but if the purchaser brought within our jurisdiction the subject of the purchase, he could claim no rights under the contract of sale against him, because such a relation of the parties is in conflict with our fundamental law

The first question then is, Is the contract made by the plaintiff with Elizabeth Lycka one which, under our laws, he might enforce against her ?

It obviously is not a contract of apprenticeship, Elizabeth Lycka being of full age at the time of its inception. If it were, it would be void, for, among other reasons, its omission to provide for the education of the apprentice. Rev. Sts. *c.* 80.

1. The contract is uncertain and indefinite as to the nature and extent of the service to be performed.

The language of the indenture is that Elizabeth Lycka " hath bound and put herself servant to the said T. Parsons, Jr., to serve him, his executors and assigns, from the day of the date hereof for and during the full term of five years thence next ensuing, during all which term the said servant her said master, his executors or assigns, faithfully shall serve, and that honestly and obediently in all things, as a good and dutiful servant ought to do." It is nowhere said that the service is to be domestic service, or that she is to be a house servant. If any inference could be drawn from the plaintiff's position and business that he would be likely to require such service and none other, the inference would be controlled by the consideration that the service is not limited to the plaintiff or his family.

2. Not only is the contract wholly indefinite as to the nature of the service to be performed, but it is equally uncertain as to the place of performance.

It cannot be limited to the place of the plaintiff's domicil. The nature of the service does not so restrict it. The service is not confined to the plaintiff. She is to serve him, or " his executors or assigns." If it be said that because the master is described as a citizen of the United States, the place of performance would be within the United States ; with so many states, differing so widely in their local laws and domestic policy, and especially upon this subject matter, the contract gains little certainty, either as to the nature of the service, or the place of its performance.

3. Again, the contract is uncertain and indefinite as to the compensation to be paid for the labor of the servant. There is

no stipulation for her passage to this country. Upon what is meant by the giving " of customary freedom dues," no light or aid is furnished us. As applied to a minor, in an indenture of apprenticeship, its meaning might possibly be ascertained by reference to an existing custom or provision of statute upon the subject. But this was a contract with an adult; and if, as the plaintiff assumes, the contract is to be performed in this commonwealth, and to be interpreted by our laws, the provision is without meaning and senseless. It looks apparently to a state of things which, under our laws, cannot exist; a term of servitude, upon the expiration of which " freedom dues " are to be paid.

As to the nature, then, of the service to be performed, the place where and the person to whom it is to be rendered, and the compensation to be paid, the contract is uncertain and indefinite ; indefinite and uncertain, not from any infirmity in the language of the parties, but in its substance and intent.

It is, in substance and effect, a contract for servitude, with no limitation but that of time ; leaving the master to determine what the service should be, and the place where and the person to whom it should be rendered.

Such a contract, it is scarcely necessary to say, is against the policy of our institutions and laws. If such a sale of service could be lawfully made for five years, it might, from the same reasons, for ten, and so for the term of one's life. The door would thus be opened for a species of servitude, inconsistent with the first and fundamental article of our Declaration of Rights, which, *proprio vigore*, not only abolished every vestige of slavery then existing in the Commonwealth, but rendered every form of it *thereafter* legally impossible. That article has always been regarded not simply as the declaration of an abstract principle, but as having the active force and conclusive authority of law.

If the contract relied upon by the plaintiff was valid where it was made, of which there is no evidence, it would lose its force when the subject of it was brought within the Commonwealth. No comity would require us to enforce it, or suffer it to be executed. When the parties, master and servant, came within the

jurisdiction of our laws, the contract, so far as it was incon-sistent with those laws, was without effect. The master could have just the claim upon the labor of the servant, and just the power over her, which our laws permitted, and no more. He who voluntarily subjects himself to those laws, finds in them the rule of restraint as well as of action.

Under this contract the plaintiff had no claim for the labor of the servant for the term of five years, or for any term whatever. She was under no legal obligation to remain in his service. There was no time during which her service was due to the plaintiff, and during which she was kept from such service by the acts of the defendants. Upon neither of the counts, there-fore, can the action be sustained. *Sykes* v. *Dixon*, 9 Ad. & El. 693. *Boston Glass Manufactory* v. *Binney*, 4 Pick. 425.

*Judgment on the verdict.*